IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENERAL MILLS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.    2:26-cv-02359 |
| | : | |
| LIBERTY MUTUAL FIRE INSURANCE | : | |
| COMPANY and ACE PROPERTY | : | |
| AND CASUALTY INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |
| | : | Filed on behalf of Plaintiff, |
| | : | General Mills, Inc. |
| | : | |
| | : | Counsel for Plaintiff: |
| | : | |
| | : | McGuireWoods LLP |
| | : | Emma R. Leonelli |
| | : | PA ID No. 322705 |
| | : | 260 Forbes Avenue, Suite 1800 |
| | : | Pittsburgh, PA 15222 |
| | : | 412-667-7912 |
| | : | eleonelli@mcguirewoods.com |
| | : | |
| | : | Shaun Crosner (*pro hac vice forthcoming*) |
| | : | 800 Century Park East, 7th Floor |
| | : | Los Angeles, CA 90067 |
| | : | 310-315-8202 |
| | : | scrosner@mcguirewoods.com |

Nicholas Hill (*pro hac vice forthcoming*)
1075 Peachtree Street NE
35th Floor
Atlanta, GA 30309
404-443-5748
nhill@mcguirewoods.com

1

**COMPLAINT**

Plaintiff General Mills, Inc. ("General Mills"), for its Complaint against Defendants Liberty Mutual Fire Insurance Company ("Liberty") and ACE Property and Casualty Insurance Company ("ACE") (collectively, the "Insurers"), alleges as follows:

**INTRODUCTION**

1.      General Mills brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, seeking a judicial declaration of the parties' respective rights and obligations under certain primary and excess/umbrella commercial general liability insurance policies issued by Liberty and ACE to General Mills.

2.      General Mills has been named as a defendant in a lawsuit filed by Bryce Martinez titled *Martinez v. Kraft Heinz Co. Inc., et al.*, No. 2:25-cv-00377 (E.D. Pa.) (the "*Martinez* Action"), which is presently pending here in the Eastern District of Pennsylvania.  The *Martinez* Action alleges that General Mills manufactured, marketed, and sold ultra-processed foods ("UPF") that allegedly caused bodily injuries to Mr. Martinez, who was eighteen years old when he filed the *Martinez* Action in late 2024.  Specifically, Mr. Martinez alleges that his consumption of UPF manufactured, marketed, and sold by General Mills throughout his life caused him to suffer bodily injuries and disease, including Type 2 Diabetes and Non-Alcoholic Fatty Liver Disease.  Mr. Martinez seeks substantial damages to compensate him for his alleged bodily injuries.

3.      General Mills promptly tendered the *Martinez* Action to its liability insurers, including Liberty and ACE.  The Liberty commercial general liability policies and ACE first-layer excess/umbrella policies afford broad coverage for lawsuits alleging "bodily injury" caused by an "occurrence," and they obligate Liberty to defend General Mills against any suits seeking damages because of such alleged bodily injury, subject to the satisfaction of a $2,000,000 deductible.  The

2

excess/umbrella policies issued by ACE likewise provide General Mills with broad coverage for lawsuits alleging "bodily injury" caused by an "occurrence."

4.    In response to General Mills' tender, Liberty issued a letter reserving its purported right to deny coverage for the *Martinez* Action based on various policy exclusions and limitations. ACE acknowledged that it received notice of the *Martinez* Action more than a year ago, but ACE has not yet acknowledged its duties to General Mills (and, indeed, has not even provided a formal coverage position, despite a follow-up inquiry from General Mills).

5.    General Mills has recently been named a defendant in several additional, similar lawsuits filed throughout the country alleging that General Mills caused injuries through its manufacture, marketing, and sale of UPF to consumers.  Those additional lawsuits, as well as any other similar lawsuits that may be filed in the future (collectively, along with the *Martinez* Action, the "Underlying Lawsuits"), are described below in this Complaint.

6.    Given that Liberty and ACE have failed to acknowledge the full extent of their broad duties under their respective policies, General Mills hereby seeks a declaration as to Liberty and ACE's respective coverage obligations to General Mills in connection with the Underlying Lawsuits.

**PARTIES**

7.    General Mills is a Delaware corporation with its principal place of business and headquarters located at Number One General Mills Boulevard, Minneapolis, Minnesota 55426. For diversity of citizenship purposes, General Mills is a citizen of Delaware and Minnesota.

8.    On information and belief, Liberty is a stock insurance company organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts.   Therefore, for diversity of citizenship purposes, Liberty is a citizen of

Massachusetts.  As described below, Liberty issued and was paid by General Mills for a series of primary commercial general liability insurance policies that are at issue in this action.

9.      On information and belief, ACE is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.  Therefore, for diversity of citizenship purposes, ACE is a citizen of Pennsylvania.  As described below, ACE issued first-layer excess/umbrella commercial general liability insurance policies to General Mills during the relevant policy periods that are at issue in this action.

**JURISDICTION & VENUE**

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  General Mills is a citizen of Delaware and Minnesota.  Liberty is a citizen of Massachusetts.  ACE is a citizen of Pennsylvania.  Complete diversity of citizenship exists among all parties.

11.      This Court also has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, which authorizes federal courts to declare the rights and legal relations of interested parties in cases of actual controversy within its jurisdiction.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this District.  As noted above, the *Martinez* Action is currently pending in this District as Case No. 2:25-cv-00377. The majority of the defense costs General Mills has incurred to date in defense of the Underlying Lawsuits have been, and continue to be, incurred in this District in connection with the ongoing defense of the *Martinez* Action, and future defense costs will likewise be incurred in this District. Furthermore, ACE is a citizen of Pennsylvania and maintains its corporate headquarters within the

geographical bounds of this District, and on information and belief Liberty has transacted and continues to transact insurance business in this District.

## FACTUAL ALLEGATIONS

**A. The Liberty Policies**

13. As relevant to this action, Liberty issued a series of primary commercial general liability insurance policies to General Mills for consecutive policy periods from June 1, 2009, through June 1, 2015 (collectively, the "Liberty Policies"). The specific Liberty Policies are as follows:

    i. Policy No. TB2-641-004137-229 was issued to General Mills for the June 1, 2009, to June 1, 2010, policy period. Subject to a $2,000,000 deductible, this policy provides per-occurrence limits of $2,000,000, general aggregate limits of $5,000,000, and an aggregate limit of $5,000,000 for products-completed operations.

    ii. Policy No. TB2-641-004137-220 was issued to General Mills for the June 1, 2010, to June 1, 2011, policy period. Subject to a $2,000,000 deductible, this policy provides per-occurrence limits of $2,000,000, general aggregate limits of $5,000,000, and an aggregate limit of $5,000,000 for products-completed operations.

    iii. Policy No. TB2-641-004137-221 was issued to General Mills for the June 1, 2011, to June 1, 2012, policy period. Subject to a $2,000,000 deductible, this policy provides per-occurrence limits of $2,000,000, general aggregate limits of $5,000,000, and an aggregate limit of $5,000,000 for products-completed operations.

iv.    Policy No. TB2-641-004137-222 was issued to General Mills for the June 1, 2012, to June 1, 2013, policy period.  Subject to a $2,000,000 deductible, this policy provides per-occurrence limits of $2,000,000, general aggregate limits of $5,000,000, and an aggregate limit of $5,000,000 for products-completed operations.

v.    Policy No. TB2-641-004137-223 was issued to General Mills for the June 1, 2013, to June 1, 2014, policy period.  Subject to a $2,000,000 deductible, this policy provides per-occurrence limits of $2,000,000, general aggregate limits of $5,000,000, and an aggregate limit of $5,000,000 for products-completed operations.

vi.    Policy No. TB2-641-004137-224 was issued to General Mills for the June 1, 2014, to June 1, 2015, policy period.  Subject to a $2,000,000 deductible, this policy provides per-occurrence limits of $2,000,000, general aggregate limits of $5,000,000, and an aggregate limit of $5,000,000 for products-completed operations.

14.    Each of the Liberty Policies contains materially identical terms and conditions.  A true and correct copy of at least the relevant portions of the 2014-15 Liberty Policy is attached hereto as **Exhibit A** and incorporated herein by reference.  The terms and conditions of the 2014-15 Liberty Policy are representative of the terms and conditions in the other Liberty Policies.

15.    Subject to satisfaction of the applicable deductible, each of the Liberty Policies obligates Liberty to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" that occurs during the Policy's policy period and that is caused by an "occurrence." *See, e.g.*, Ex. A at p. 25.

16.     Each Liberty Policy also requires Liberty to defend General Mills or pay General Mills' defense costs in connection with any covered or potentially covered lawsuit filed anywhere in the United States seeking damages because of "bodily injury" that occurs during the Policies' policy period and that is caused by an "occurrence." *See id.*

17.     The Liberty Policies define "bodily injury" to include, in pertinent part, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" and "mental anguish, shock or humiliation arising out of injury." *See, e.g.*, Ex. A at p. 69.

18.     Each of the Liberty Policies contains an endorsement titled "Occurrence Redefined." *See, e.g.*, Ex. A at p. 89.  Pursuant to this endorsement, "occurrence" is defined with respect to "bodily injury" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*  The endorsement further states that "All such exposure to substantially the same general conditions shall be considered as arising out of the same 'occurrence', regardless of the frequency or repetition thereof, or the number of claimants." *Id.*  Thus, the "Occurrence Redefined" endorsement confirms that multiple claims alleging similar or repeated harmful exposures—such as those alleged in the Underlying Lawsuits—are considered to arise out of a common set of conditions and therefore constitute a single "occurrence" for purposes of applying the Liberty Policies' coverage, including the deductible, limits of liability, and Liberty's defense and indemnity obligations.

19.     Each of the Liberty Policies contains an endorsement imposing a $2,000,000 deductible for each "occurrence." *See, e.g.*, Ex. A at p. 43.  Pursuant to the terms of these endorsements, General Mills is responsible for the initial $2,000,000 of all "damages" and "Supplementary Payments" because of all "bodily injury" as the result of any one "occurrence."

Supplementary Payments include defense costs, which satisfy the $2,000,000 deductible amount. The relevant endorsements each state that, upon General Mills' satisfaction of the $2,000,000 per-occurrence deductible, Liberty becomes "responsible for those amounts of damages . . . and SUPPLEMENTARY PAYMENTS" going forward, subject to the applicable limits of insurance. Notably, pursuant to the terms of the Liberty Policies, Liberty's payment of defense costs does not erode the limits of liability under the Liberty Policies, and Liberty remains responsible for paying General Mills' defense costs until it exhausts its available policy limits through one or more payments of "damages."

20. Each of the Liberty Policies also contains an endorsement titled "Non-Cumulation of Liability (Same Occurrence)." *See, e.g.*, Ex. A at p. 86. In pertinent part, these endorsements each state:

> If one "occurrence" causes "bodily injury" . . . during the policy period and during the policy period of one or more prior and/or future liability policy(ies) . . . issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence." . . . .

*Id.*

21. Following the expiration of the last Liberty Policy on June 1, 2015, General Mills obtained primary commercial general liability coverage for subsequent policy years from one or more other insurers under policies with different terms. General Mills does not at this time seek coverage under those later-issued policies, and those later-issued policies do not affect Liberty's or ACE's coverage obligations to General Mills for the Underlying Lawsuits.

**B. The ACE Policies**

22. As relevant to this action, ACE issued a series of first-layer commercial excess/umbrella liability insurance policies to General Mills for consecutive policy periods from

June 1, 2009 through June 1, 2025 (collectively, the "ACE Policies").  The ACE Policies sit in excess of the applicable primary policies, including the Liberty Policies for the overlapping policy periods, and provide additional limits of liability above the limits afforded by the underlying primary insurance.  The specific ACE Policies are as follows:

    i.    Policy No. XOO G24900058 was issued to General Mills for the June 1, 2009, to June 1, 2010, policy period.  Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $25,000,000, general aggregate limits of $25,000,000, and an aggregate limit of $25,000,000 for products-completed operations.

    ii.    Policy No. XOO G24908641 was issued to General Mills for the June 1, 2010, to June 1, 2011, policy period.  Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $25,000,000, general aggregate limits of $25,000,000, and an aggregate limit of $25,000,000 for products-completed operations.

    iii.    Policy No. XOO G25831445 was issued to General Mills for the June 1, 2011, to June 1, 2012, policy period.  Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $25,000,000, general aggregate limits of $25,000,000, and an aggregate limit of $25,000,000 for products-completed operations.

    iv.    Policy No. XOO G27045716 was issued to General Mills for the June 1, 2012, to June 1, 2013, policy period.  Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $25,000,000, general aggregate limits

of $25,000,000, and an aggregate limit of $25,000,000 for products-completed operations.

v. Policy No. XOO G27052691 was issued to General Mills for the June 1, 2013, to June 1, 2014, policy period. Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $25,000,000, general aggregate limits of $25,000,000, and an aggregate limit of $25,000,000 for products-completed operations.

vi. Policy No. XOO G27421362 was issued to General Mills for the June 1, 2014, to June 1, 2015, policy period. Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $25,000,000, general aggregate limits of $25,000,000, and an aggregate limit of $25,000,000 for products-completed operations.

vii. Policy No. XOO G27833925 was issued to General Mills for the June 1, 2015, to June 1, 2016, policy period. Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $25,000,000, general aggregate limits of $25,000,000, and an aggregate limit of $25,000,000 for products-completed operations.

viii. Policy No. XOO G28119744 001 was issued to General Mills for the June 1, 2016, to June 1, 2017, policy period. Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $25,000,000, general aggregate limits of $25,000,000, and an aggregate limit of $25,000,000 for products-completed operations.

ix. Policy No. XOO G28119744 002 was issued to General Mills for the June 1, 2017, to June 1, 2018, policy period. Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $25,000,000, general aggregate limits of $25,000,000, and an aggregate limit of $25,000,000 for products-completed operations.

x. Policy No. XOO G28119744 003 was issued to General Mills for the June 1, 2018, to June 1, 2019, policy period. Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $15,000,000, general aggregate limits of $15,000,000, and an aggregate limit of $15,000,000 for products-completed operations.

xi. Policy No. XOO G28119744 004 was issued to General Mills for the June 1, 2019, to June 1, 2020, policy period. Subject to a $25,000 self-insured retention, this policy provides per-occurrence limits of $15,000,000 and general aggregate limits of $15,000,000.

xii. Policy No. XEU G28119744 005 was issued to General Mills for the June 1, 2020, to June 1, 2021, policy period. Subject to a $25,000 self-insured retention for umbrella coverage and a $2,000,000 self-insured retention for enhanced coverage, this policy provides per-occurrence limits of $15,000,000, general aggregate limits of $15,000,000, and an aggregate limit of $15,000,000 for products-completed operations.

xiii. Policy No. XEU G28119744 006 was issued to General Mills for the June 1, 2021, to June 1, 2022, policy period. Subject to a $25,000 self-insured retention for umbrella coverage and a $2,000,000 self-insured retention for enhanced

coverage, this policy provides per-occurrence limits of $15,000,000, general aggregate limits of $15,000,000, and an aggregate limit of $15,000,000 for products-completed operations.

xiv. Policy No. XEU G28119744 007 was issued to General Mills for the June 1, 2022, to June 1, 2023, policy period. Subject to a $25,000 self-insured retention for umbrella coverage and a $2,000,000 self-insured retention for enhanced coverage, this policy provides per-occurrence limits of $15,000,000, general aggregate limits of $15,000,000, and an aggregate limit of $15,000,000 for products-completed operations.

xv. Policy No. XEU G28119744 008 was issued to General Mills for the June 1, 2023, to June 1, 2024, policy period. Subject to a $25,000 self-insured retention for umbrella coverage and a $2,000,000 self-insured retention for enhanced coverage, this policy provides per-occurrence limits of $15,000,000, general aggregate limits of $15,000,000, and an aggregate limit of $15,000,000 for products-completed operations.

xvi. Policy No. XEU G28119744 009 was issued to General Mills for the June 1, 2024, to June 1, 2025, policy period. Subject to a $25,000 self-insured retention for umbrella coverage and a $2,000,000 self-insured retention for enhanced coverage, this policy provides per-occurrence limits of $15,000,000, general aggregate limits of $15,000,000, and an aggregate limit of $15,000,000 for products-completed operations.

23. Each of the ACE Policies contains materially similar terms and conditions. A true and correct copy of at least the relevant portions of the 2014-15 ACE Policy is attached hereto as

**Exhibit B** and incorporated herein by reference.  The terms and conditions of the 2014-15 ACE Policy are representative of the terms and conditions in the other ACE Policies.

24.    Under the Insuring Agreement of each ACE Policy, ACE agreed to "pay on behalf of the 'insured' those sums in excess of the 'retained limit' that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury'" that is caused by an "occurrence" during the policy period.  *See, e.g.*, Ex. B at p. 7.

25.    The ACE Policies define "bodily injury" to include "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," as well as mental anguish and mental injury.  *See, e.g.*, *id.* at p. 21.

26.    The ACE Policies define "occurrence" in pertinent part to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See, e.g.*, *id.* at p. 23.

27.    Under the ACE Policies, ACE has a duty to defend General Mills against a suit seeking damages for "bodily injury" when the damages sought would be covered by underlying insurance but for the exhaustion of the applicable underlying limits.  *See, e.g.*, *id.* at p. 9.

28.    Furthermore, under the ACE Policies, ACE's duty to defend continues until the applicable ACE Policy has been exhausted by the payment of settlements or judgments.  *See, e.g.*, Ex. B at pp. 9-10.  ACE's payment of defense costs does not reduce or exhaust the limit of liability of the ACE Policies.  *Id.* at p. 10.

**C.  The *Martinez* Action and the Other Underlying Lawsuits**

29.    On or about December 10, 2024, plaintiff Bryce Martinez filed the *Martinez* Action in the Court of Common Pleas of Philadelphia County, Pennsylvania, in a lawsuit titled *Martinez v. Kraft Heinz Company, Inc., et al.*, Case ID No. 241201154.  The *Martinez* Action was subsequently removed to this District, where it remains pending as *Martinez v. Kraft Heinz Co.*

*Inc., et al.*, No. 2:25-cv-00377 (E.D. Pa.).  A true and correct copy of the complaint filed in the Martinez Action is attached hereto as **Exhibit C** and incorporated herein by reference.

30.     The *Martinez* Action names General Mills and various other entities as defendants and alleges, among other things, that the defendants manufactured, marketed, and sold UPF that caused bodily injury to Mr. Martinez, including Type 2 Diabetes and Non-Alcoholic Fatty Liver Disease.  General Mills has incurred and continues to incur substantial defense costs in connection with the *Martinez* Action.

31.     In his complaint, Mr. Martinez alleges that, as a result of the defendants' conduct, he was "chronically exposed to harmful levels of Defendants' UPF" and was diagnosed with Type 2 Diabetes and Non-Alcoholic Fatty Liver Disease at age 16.  He alleges that his consumption of UPF manufactured, marketed, and sold by General Mills during the Policies' policy period caused these injuries and ailments.

32.     In addition to the *Martinez* Action, at least six other lawsuits have been filed to date against General Mills asserting similar allegations—namely, that General Mills manufactured, marketed, and sold UPF during the Liberty and ACE Policies' policy periods that caused bodily injury to consumers.  Those additional actions include: (1) *Muthusami v. The Kraft Heinz Company, et al.*, Case No. 6:26-cv-00113, filed in the United States District Court for the Middle District of Florida (the "*Muthusami* Action"); (2) *People of the State of California v. The Kraft Heinz Company, et al.*, filed by the San Francisco City Attorney in the Superior Court of the State of California, County of San Francisco (the "*California* Action"); (3) *Lawton v. The Kraft Heinz Company*, Case No. 1:26-cv-44-LG-RPM, filed in the United States District Court of the Southern District of Mississippi (the "*Lawton* Action"); (4) *Sanford v. The Kraft Heinz Company, et al.*, Case No. 7:26-cv-01430, filed in the United States District Court for the Southern District of New

York (the "*Sanford* Action"); (5) *Ford v. Kraft-Heinz, et al.*, Case No. 3:26-cv-00077-JM, filed in the United States District Court for the Eastern District of Arkansas (the "*Ford* Action"); and (6) *Shastin Jenkins v. The Kraft Heinz Company, et al.*, Case No. 2:26-cv-00115, filed in the United States District Court for the Eastern District of Louisiana (the "*Jenkins* Action").[1] True and correct copies of those complaints are attached hereto as **Exhibits D-I**, respectively.

33.    As of the date of this Complaint, General Mills has incurred defense costs approximately equal to or in excess of the per-occurrence deductible under the Liberty Policies. The vast majority of those fees and costs were incurred in connection with the *Martinez* Action, which predated the other Underlying Lawsuits by almost one year.

34.    To the extent any additional lawsuits asserting similar allegations against General Mills relating to its manufacture, marketing, and sale of UPF are filed in the future, General Mills reserves the right to amend or supplement this Complaint to address its right to insurance coverage with respect to any such lawsuits.

**D.  General Mills' Pursuit of Insurance Coverage for the Underlying Lawsuits**

35.    On or about January 2, 2025, General Mills tendered the *Martinez* Action to Liberty, ACE, and certain of its other liability insurers.

36.    On or about January 15, 2025, ACE acknowledged receipt of notice of the *Martinez* Action and reserved its purported rights, "including, but not limited to, the right to disclaim coverage to the extent that coverage for this matter is precluded, barred, limited or otherwise excluded pursuant to the terms, conditions, language, provisions, exclusions and/or endorsements

---

[1] The *Jenkins* Action has been voluntarily dismissed.  General Mills incurred costs related to the defense of the same prior to its dismissal, for which it is entitled to coverage under the Liberty and ACE Policies.

contained in the insurance policy(ies) at issue." Despite these purported reservations, ACE stated that it was "reviewing this matter."

37.     On or about May 14, 2025, Liberty acknowledged receipt of the *Martinez* complaint and agreed to "participate in the defense of General Mills" with respect to the *Martinez* Action, subject to a reservation of its purported rights. In its May 14, 2025, letter, Liberty purported to reserve, among other things: (a) its right to disclaim insurance coverage, in whole or in part; (b) its right to withdraw from the defense if it is determined that Liberty has no obligation to defend; (c) its right to seek allocation and/or reimbursement of defense costs paid; and (d) its right to seek reimbursement from General Mills for indemnity payments and defense expenses. In its letter, Liberty further questioned whether the allegations of the *Martinez* complaint constitute an "occurrence" as defined in the Liberty Policies, and Liberty also reserved its rights with respect to an exclusion for "expected or intended" injuries. Liberty also specifically denied "any possible coverage obligation" with respect to certain of the causes of action in the *Martinez* complaint.

38.     On or about April 1, 2026, Liberty acknowledged receipt of the complaints in the *Muthusami* Action, the *Sanford* Action, and the *Lawton* Action and agreed to "participate in the defense of General Mills" with respect to those lawsuits, subject to a reservation of its purported rights. In its April 1, 2026, letter, Liberty purported to reserve, among other things: (a) its right to disclaim insurance coverage, in whole or in part; (b) its right to withdraw from the defense if it is determined that Liberty has no obligation to defend; (c) its right to seek allocation and/or reimbursement of defense costs paid; and (d) its right to seek reimbursement from General Mills for indemnity payments and defense expenses. In its letter, Liberty further questioned whether the allegations of these lawsuits constitute an "occurrence" as defined in the Liberty Policies, and Liberty also reserved its rights with respect to an exclusion for "expected or intended" injuries.

16

Liberty also specifically denied "any possible coverage obligation" with respect to certain of the causes of action in these lawsuits.

39.     Also on or about April 1, 2026, Liberty issued a coverage position letter in response to General Mills' tender of the *California* Action, in which Liberty denied any obligation to defend or indemnify General Mills.  In that letter, Liberty asserted that the *California* Action does not: (1) allege "bodily injury" sustained by a particular person or persons; (2) claim damages due to an accidental "occurrence" or fortuitous event; or (3) allege any "personal and advertising injury" or an "offense," as defined by the Liberty Policies.  Liberty further reserved its right to deny coverage on additional grounds, including that the alleged injuries were expected or intended from General Mills' standpoint.

40.     Although ACE acknowledged receipt of notice of the *Martinez* Action more than a year ago, ACE has not provided any substantive coverage position to General Mills beyond its general "reservation of rights" communicated on January 15, 2025.  General Mills has followed up with ACE on at least one occasion, but ACE has failed to confirm its coverage obligations with respect to the *Martinez* Action or any other Underlying Lawsuit.

41.     General Mills has incurred and continues to incur substantial legal fees and costs in connection with defending against the Underlying Lawsuits.  As of the date of this Complaint, General Mills has incurred defense costs approximately equal to or in excess of the per-occurrence deductible under the Liberty Policies.  A declaration of the parties' respective rights and obligations is necessary now to avoid further uncertainty as defense costs continue to mount and the deductible threshold approaches.

42.     General Mills has tendered each of the Underlying Lawsuits to Liberty and ACE, and, to the extent not waived or otherwise excused, has complied with all terms and conditions

17

precedent in the Liberty and ACE Policies.  Therefore, General Mills is entitled to coverage for each of the Underlying Lawsuits pursuant to the terms of the Liberty and ACE Policies and governing authority.

43.    Given the terms of their respective policies, Liberty and ACE lack legitimate grounds to contest their coverage obligations with respect to the *Martinez* Action and the other Underlying Lawsuits.  Nevertheless, Liberty and ACE have failed and/or refused to acknowledge the full extent of their coverage obligations, giving rise to an actual, justiciable controversy between General Mills, Liberty, and ACE regarding their respective rights and obligations under the Liberty and ACE Policies.

44.    By this lawsuit, General Mills seeks a judicial declaration of the parties' respective rights and obligations and, specifically, seeks a declaration that:

    i.    The Underlying Lawsuits arise from a single "occurrence" as defined in the Liberty and ACE Policies and, consequently, General Mills is entitled to coverage from Liberty upon satisfaction of a single $2,000,000 per-occurrence deductible;

    ii.    Once General Mills has established that it has paid at least $2,000,000 in defense costs, Liberty is obligated to assume responsibility for the cost of defending General Mills in each of the Underlying Lawsuits;

    iii.    Liberty's payment of General Mills' defense fees and costs in the Underlying Lawsuits does not erode the limit of liability available under the Liberty Policies;

iv.     Liberty is obligated to bear responsibility for the cost of defending General Mills in each of the Underlying Lawsuits until such time that it pays $2,000,000 in judgments or settlements;

v.     Pursuant to the terms of the Liberty Policies and governing authority, General Mills is entitled to select which of the Liberty Policies will be deemed exhausted by Liberty's payment of $2,000,000 in judgments or settlements;

vi.     Upon Liberty's payment of $2,000,000 in judgments or settlements and consequential exhaustion of its per-occurrence limits, General Mills will be entitled to coverage under the ACE Policy providing first-level excess coverage for the policy period in which Liberty has exhausted its per-occurrence limits;

vii.     Once its coverage obligations are triggered, ACE shall be obligated to bear responsibility for the cost of defending and otherwise covering the Underlying Lawsuits until such time that it exhausts its $25,000,000 per-occurrence limits through the payment of covered damages, settlements, or judgments; and

viii.     ACE's payment of General Mills' defense fees and costs in the Underlying Lawsuits does not erode the limit of liability available under the ACE Policies.

### CAUSES OF ACTION

**Count I -- Declaratory Judgment**
**As Against Liberty and ACE, pursuant to 28 U.S.C. §§ 2201–2202**

45.     General Mills repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

46.     An actual and justiciable controversy exists between General Mills and the Insurers.

47.     Specifically, General Mills contends that it is entitled to full coverage for each Underlying Lawsuit—including both a defense and indemnity for any settlement or judgment

19

therein—from one or more Insurers under one or more of the Liberty and ACE Policies, and seeks declarations confirming, among other things, that:

i. The Underlying Lawsuits arise from a single "occurrence" as defined in the Liberty and ACE Policies and, consequently, General Mills is entitled to coverage from Liberty upon satisfaction of a single $2,000,000 per-occurrence deductible;

ii. Once General Mills has established that it has paid at least $2,000,000 in defense costs, Liberty is obligated to assume responsibility for the cost of defending General Mills in each of the Underlying Lawsuits;

iii. Liberty's payment of General Mills' defense fees and costs in the Underlying Lawsuits does not erode the limit of liability available under the Liberty Policies;

iv. Liberty is obligated to bear responsibility for the cost of defending General Mills in each of the Underlying Lawsuits until such time that it pays $2,000,000 in judgments or settlements;

v. Pursuant to the terms of the Liberty Policies and governing authority, General Mills is entitled to select which of the Liberty Policies will be deemed exhausted by Liberty's payment of $2,000,000 in judgments or settlements;

vi. Upon Liberty's payment of $2,000,000 in judgments or settlements and consequential exhaustion of its per-occurrence limits, General Mills will be entitled to coverage under the ACE Policy providing first-level excess coverage for the policy period in which Liberty has exhausted its per-occurrence limits;

vii. Once its coverage obligations are triggered, ACE shall be obligated to bear responsibility for the cost of defending and otherwise covering the Underlying Lawsuits until such time that it exhausts its $25,000,000 per-occurrence limits through the payment of covered damages, settlements, or judgments; and

viii. ACE's payment of General Mills' defense fees and costs in the Underlying Lawsuits does not erode the limit of liability available under the ACE Policies.

48. General Mills is informed and believes, and on that basis alleges, that the Insurers dispute one or more of General Mills' contentions as stated herein.

49. Therefore, declaratory relief is necessary to determine General Mills' rights under the Liberty and ACE Policies. Specifically, General Mills seeks a judicial declaration confirming that General Mills is entitled to full coverage, including a defense and indemnity, for each of the Underlying Lawsuits, as outlined above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff General Mills, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants Liberty Mutual Fire Insurance Company and ACE Property and Casualty Insurance Company, and grant the following relief:

A. A declaration in accord with General Mills' contentions stated above;

B. An award to General Mills of its costs and expenses incurred in this action, including reasonable attorneys' fees, to the extent permitted by law; and

C. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff General Mills, Inc. hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Emma R. Leonelli*
McGuireWoods LLP
Emma R. Leonelli
PA ID No. 322705
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
412-667-7912
eleonelli@mcguirewoods.com

Shaun Crosner (*pro hac vice forthcoming*)
800 Century Park East, 7th Floor
Los Angeles, CA 90067
310-315-8202
scrosner@mcguirewoods.com

Nicholas Hill (*pro hac vice forthcoming*)
1075 Peachtree Street NE
35th Floor
Atlanta, GA 30309
404-443-5748
nhill@mcguirewoods.com